Filed 6/14/16; pub. order 7/8/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BERNADETTE MAGNO et al., | D067687 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00003057-CU-FR-CTL) |
| THE COLLEGE NETWORK, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Joel M. Pressman, Judge. Affirmed.

Reich Radcliffe & Hoover, Adam T. Hoover and Richard J. Radcliffe, for Defendant and Appellant.

Law Offices of Hannah J. Bingham and Hannah J. Bingham; Scott A. Savary for Plaintiffs and Respondents.

The College Network, Inc. (TCN) appeals from an order denying its motion to compel arbitration of a consumer fraud and breach of contract action brought by

Plaintiffs Bernadette Magno, Rosanna Garcia, and Sheree Rudio. TCN argues the arbitration provision in Plaintiffs' purchase agreements is valid and enforceable and contends the trial court erred when it ruled the provision unconscionable. Alternatively, TCN argues that if the forum selection clause is unconscionable, the court abused its discretion in voiding the arbitration provision altogether rather than severing the objectionable provisions and enforcing the remainder. We conclude the trial court correctly determined the arbitration provision to be procedurally and substantively unconscionable and did not abuse its discretion in voiding it in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

TCN is an Indiana-based company with customers nationwide. In 2012, TCN's California sales representative visited Plaintiffs' homes in San Diego County to encourage them to enroll in TCN's distance-learning partnership with Indiana State University (ISU) and California State University (CSU). Plaintiffs, all California residents, were Licensed Vocational Nurses (LVNs) who sought to become Registered Nurses (RNs) in California. TCN's representative told Plaintiffs they could complete much of their necessary coursework for a B.S. degree in nursing online through ISU's distance-learning program and complete their clinical training through CSU. TCN's representative told Plaintiffs the program would allow them to obtain B.S. degrees in nursing from ISU and qualify to take the RN examination offered by the California Board of Registered Nursing.

The program involved three phases. First, Plaintiffs would satisfy their general education and prerequisite requirements through TCN online to qualify for admission

2

into ISU's LVN to B.S. in nursing program. Next, Plaintiffs would apply for admission at ISU. Thereafter, Plaintiffs would complete their course requirements online through ISU and complete their clinical training through CSU.

Plaintiffs executed purchase agreements with TCN. Each purchase agreement was a two-sided, 11 x 14 carbon paper form. On the front side of the form, TCN's sales representative inserted information in the blank spaces provided for each Plaintiff's name, contact information, date, and purchase price. By executing the purchase agreements, Plaintiffs acknowledged having read, understood, and agreed to the terms on both sides of the agreement. The back side of the purchase agreement contained several preprinted terms. One of the terms was an arbitration provision, which stated:

> "GOVERNING LAW AND DISPUTE RESOLUTION
>
> "Any and all disputes, claims or controversies (Claims) arising from, out of, or relating to this Agreement, or the relationships between Buyer and TCN which result from this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, shall be determined, confidentially, by binding arbitration in Marion County, Indiana, before one neutral arbitrator selected by TCN, and with the consent of Buyer (and no other person), which consent shall not be unreasonably withheld; provided, however, that either party may assert an action in small claims court. Any arbitration or small claims action (including any appeal if allowed) shall be conducted between Buyer and TCN only (and only in Buyer's individual capacity), and shall not resolve, seek to resolve, nor purport to resolve any disputes, claims, or controversies of any person other than Buyer and TCN. This agreement to arbitrate shall not preclude either Buyer or TCN from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.
>
> "This Agreement shall, notwithstanding any conflicts of laws, be governed by the laws of Buyer's state of residence when executed by Buyer, and any applicable federal laws; provided, however, Buyer and TCN agree and understand that their decision and agreement to

3

arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The arbitration proceeding may be conducted telephonically or videographically. Any demand for arbitration must be served on the other party (and any small claims action must be filed) within one year of the date any Claims accrue. TCN shall notify Buyer of the arbitrator selected (for Buyer's consent) within 30 days. The arbitrator will adhere to the terms of this arbitration agreement. If TCN and Buyer do not agree otherwise, the rules for the conduct of the arbitration shall be determined by the arbitrator. Judgment may be entered on the award in any court having jurisdiction.

"Buyer shall be required to advance no more than $250 for the arbitration filing fee and arbitrator's fee. However, the arbitrator may, in the award, allocate, and order reimbursement of all or part of the costs of arbitration, including fees of the arbitrator and the reasonable attorneys' fees to the prevailing party."

In their first year of study, Plaintiffs learned they would not be eligible for formal admission into ISU. Plaintiffs requested refunds from TCN, but TCN refused to provide them.

Plaintiffs sued TCN in February 2014, seeking equitable and monetary relief. Plaintiffs' Second Amended Complaint, filed in October 2014, asserted statutory claims under the Consumer Legal Remedies Act (Civ. Code, §§ 1750 et seq.) and Unfair Competition Law (Bus. & Prof. Code, §§ 17200 et seq.) and common law misrepresentation and breach of contract claims. Plaintiffs alleged that in 2012, following an investigation into the clinical component of the program at CSU, ISU had suspended enrollment into its LVN to B.S. in nursing program. Plaintiffs alleged TCN and other defendants concealed this information and misrepresented that enrolling in the program would enable Plaintiffs to qualify for entrance into ISU's nursing program. Plaintiffs alleged each of them had paid program deposits and loan payments based on

4

these representations.  Plaintiffs requested compensatory damages and injunctive, declaratory, and equitable relief.

In December 2014, TCN moved to compel arbitration.  Plaintiffs opposed TCN's motion, arguing the arbitration provision in the purchase agreement was unconscionable and therefore unenforceable.  Each Plaintiff submitted a declaration describing the circumstances of TCN's sales pitch and contract execution.  TCN did not submit any evidence, but it filed objections to certain representations in Plaintiffs' declarations.

The trial court issued a tentative ruling prior to the hearing, granting TCN's motion to compel arbitration.  However, on December 31, 2014, following oral argument, the court denied TCN's motion to compel, overruling most of TCN's evidentiary objections and finding the arbitration provision procedurally and substantively unconscionable. TCN timely appealed.

## DISCUSSION

TCN challenges the denial of its motion to compel arbitration.  As we explain, we conclude the trial court properly found the arbitration provision in TCN's purchase agreement to be procedurally and substantively unconscionable, and therefore unenforceable.

## I.

### *Standard of Review*

"Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review."  (*Serpa v. California Surety Investigations, Inc.* (2013) 215

Cal.App.4th 695, 701-702.)  " 'However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." ' "  (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820-821 (*Lhotka*); see *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*).)  We review the trial court's ruling on severance of an unconscionable provision for abuse of discretion.  (*Lhotka,* at p. 821; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 (*Armendariz*).)  "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." (*Lhotka, supra,* at p. 821.)

## II.

### *Unconscionability*

In signing the purchase agreements with TCN, Plaintiffs agreed to submit "[a]ny and all disputes, claims, or controversies" to binding arbitration governed by the Federal Arbitration Act (FAA).  The FAA reflects a " 'liberal federal policy favoring arbitration,' " and the " 'fundamental principle that arbitration is a matter of contract.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).)  California courts favor arbitration "as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification." (*Armendariz, supra,* 24 Cal.4th at p. 115.)  As a result, arbitration agreements are valid, irrevocable, and enforceable except

6

on grounds that exist for revocation of contracts more generally, such as fraud, duress, or unconscionability. (*Concepcion, supra,* at p. 339; 9 U.S.C. § 2; Code Civ. Proc., § 1281; *Sanchez v. Valencia Holding Co.* (2015) 61 Cal.4th 899, 912-913 (*Valencia*); *Sonic-Calabasas A., Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142 (*Sonic II*).)[1] Courts must consider whether an agreement was "unconscionable at the time it was made." (Civ. Code, § 1670.5, subd. (a); *Valencia, supra,* at p. 920.) Because unconscionability is a contract defense, the party asserting it bears the burden of proof. (*Valencia, supra,* at p. 911.)

Unconscionability consists of both procedural and substantive elements. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Ibid.*) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Ibid.*) Both elements must be present for a court to refuse to enforce an arbitration agreement. (*Valencia, supra,* 61 Cal.4th at p. 910.) However, the elements do

---

1  In *Concepcion*, the United States Supreme Court disapproved of California authority holding class action waivers in consumer form contracts per se unconscionable. As *Concepcion* explained, even if a state law applies evenly to all contracts, the FAA preempts the law if, as applied, it interferes with the fundamental attributes of arbitration such as lower costs, greater efficiency, and speed. (*Concepcion*, *supra,* 563 U.S. at pp. 344, 348, 352.) Following *Concepcion*, the California Supreme Court reaffirmed that unconscionability remains a potentially viable defense to a motion to compel arbitration. (*Sonic II, supra,* 57 Cal.4th at pp. 1142-1143, 1145; *Valencia, supra,* 61 Cal.4th at p. 912.)

not need to be present in the same degree and are evaluated on a " 'sliding scale.' " (*Ibid.*) " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Ibid.*) "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Id.* at p. 912.)[2]

## A. *Procedural Unconscionability*

Procedural unconscionability pertains to the making of the agreement and requires oppression or surprise. (*Pinnacle, supra,* 55 Cal.4th at p. 247; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795 (*Ajamian*).) " ' " 'Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*Pinnacle, supra,* at p. 247.) " '[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise

---

2      At the outset, we reject TCN's argument that the trial judge denied TCN's motion to compel arbitration because he was biased against arbitration. TCN argues the court's tentative ruling *granting* TCN's motion to compel suggests its later ruling was motivated by bias. Certainly, the court's rejection of its earlier tentative ruling after oral argument does not demonstrate bias. "A tentative ruling is just that, tentative." (*Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1378.) "[A] trial court's tentative ruling is not binding on the court; the court's final order supersedes the tentative ruling." (*Silverado Modjeska Recreation and Parks Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300.) There is nothing in the record to suggest the ruling was motivated by bias. At oral argument, the court *recognized* the parties' right to contract for arbitration and took the matter under submission to weigh the interests at stake.

or other sharp practices lie on the other end of the spectrum.' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)

The trial court found procedural unconscionability based on evidence Plaintiffs were young, were rushed through the signing process, had no ability to negotiate, did not see the arbitration language "buried on the back page of the preprinted carbon paper forms," and did not separately initial the arbitration clause. The trial court also found procedural unconscionability based on TCN's manner of presenting the program to Plaintiffs.

Substantial evidence supports the trial court's factual findings. Plaintiffs submitted declarations stating they did not consider themselves "sophisticated or educated at a high level," had no "college degree or any college courses to speak of," and had "difficulty with many of the legal terms in the documents presented" by TCN's sales representative. Plaintiffs said the process "went by in a blur," with TCN's sales representative filling out documents while talking to Plaintiffs about the program. TCN's representative described the program, told Plaintiffs they would be eligible to sit for the RN examination, and told Plaintiffs "how everything would be fine and to simply sign here and there." The representative told Plaintiffs they "could get a discount by signing up right away" and did not give Plaintiffs an opportunity to sit and read the documents. Plaintiffs stated they were unaware of the arbitration provision on the back page of the preprinted carbon paper form until after filing their lawsuit.

On appeal, TCN describes Plaintiffs as "educated and skilled nurses" with LVN licenses. TCN argues each Plaintiff had sufficient education and technical training to

9

read and consider the purchase agreements, whether during the meeting with the sales representative or in the days thereafter, and that Plaintiffs' version of events is "not credible." However, TCN presented no *evidence* to contradict Plaintiffs' declarations before the trial court. TCN filed objections to some of the representations in Plaintiffs' declarations but did not submit declarations or evidence of its own. The trial court sustained only one of TCN's evidentiary objections, striking for lack of foundation Plaintiffs' representations as to TCN's wealth and size. We accept the trial court's credibility determinations and do not reweigh the evidence on appeal. (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.)

Moreover, TCN does not dispute that the arbitration provision lies within a two-page document, the "front and back of an 11 x 14 carbon copy form." The arbitration provision lies within the section labeled, "Governing Law and Dispute Resolution," one of 13 sections preprinted in small font on the back side of the purchase agreement. It is not set apart in a separate box and did not require Plaintiffs to initial next to the language. Whereas TCN's sales representative circled, underlined, and added arrows and text next to provisions on the front page and on other documents Plaintiffs signed, there are no annotations on the page containing the arbitration provision.

This uncontroverted evidence supports the finding of procedural unconscionability. The arbitration agreement is an adhesion contract; it lies within a standardized form drafted and imposed by a party with superior bargaining strength, leaving Plaintiffs with only the option of adhering to the contract or rejecting it. (*Armendariz, supra,* 24 Cal.4th at p. 113.) The rushed nature of Plaintiffs' contract

10

negotiation, TCN's encouragement to sign up right away for a discount, and the unequal bargaining power between Plaintiffs and TCN indicate a high degree of procedural unconscionability. (See *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1252-1253 (*Higgins*) [high degree of procedural unconscionability where arbitration clause was in a paragraph near the end of a lengthy single-spaced document drafted by sophisticated defendants and signed by young and unsophisticated plaintiffs who had no opportunity to negotiate]; *Gutierrez, supra,* 114 Cal.App.4th at p. 89 [arbitration clause on preprinted automobile lease that was "particularly inconspicuous" and not negotiated or separately initialed supported procedural unconscionability]; cf. *Baltazar, supra,* 62 Cal.4th at p. 1245 [procedural unconscionability limited where plaintiff knew about arbitration provision in her employment agreement and was not manipulated into signing it]; *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179 ["where the arbitration provisions presented in a contract of adhesion are highlighted . . . , any procedural unconscionability is 'limited' "].)

As TCN points out, each Plaintiff signed the verification on the first page of the purchase agreement attesting she read and understood both pages of the agreement. In addition, the purchase agreements allowed each Plaintiff to cancel the agreement within five business days. "This language, although relevant to our inquiry, does not defeat the otherwise strong showing of procedural unconscionability." (*Higgins, supra,* 140 Cal.App.4th at p. 1253 [considering effect of similar clause].)

TCN cites language in *Valencia* that the drafting party in a consumer contract "was under no obligation to highlight the arbitration clause of its contract, nor was it

11

required to specifically call that clause to [the nondrafting party's] attention." (*Valencia, supra,* 61 Cal.4th at p. 914.)  However, the Supreme Court *found* procedural unconscionability in that case despite the consumer's failure to read the arbitration clause in his purchase agreement.  (*Id.* at pp. 914-915.)  The quoted language merely stands for the established principle that "simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it.  The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable."  (*Gutierrez, supra,* 114 Cal.App.4th at p. 88.)  Consequently, *Valencia* also addressed whether the arbitration clause was substantively unconscionable.  (*Valencia,* at p. 915.)  Following that approach, we turn to substantive unconscionability.

B.  *Substantive Unconscionability*

The substantive element looks to the actual terms of the parties' agreement to "ensure[] that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided[.]' " (*Sonic II, supra,* 57 Cal.4th at p. 1145.)  These formulations "all mean the same thing." (*Valencia, supra,* 61 Cal.4th at p. 911.)  Substantive unconscionability " 'is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party[.]" ' " (*Ibid.*)  "The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner." (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1664 (*Patterson*).)  While

private arbitration may resolve disputes faster and cheaper than judicial proceedings, it " 'may also become an instrument of injustice imposed on a "take it or leave it" basis.' " (*Armendariz, supra,* 24 Cal.4th at p. 115.) " 'The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness.' " (*Ibid.*)

The trial court found substantive unconscionability based on the arbitration provision's forum selection clause. The arbitration provision required young college-aged students to travel from San Diego, California to Marion County, Indiana to arbitrate their claims against a company that solicited their business in California. The court determined requiring Plaintiffs to travel to Indiana, or even to arrange to appear through video, would work a severe hardship on Plaintiffs and unfairly benefit TCN by effectively preventing Plaintiffs from asserting their claims.

TCN argues this was error. TCN contends the arbitration provision is "fair, neutral, and in many instances deferential" to Plaintiffs. For example, TCN argues the provision permits Plaintiffs to participate by telephone or video; provides that the laws of the buyer's state (here, California) apply; requires Plaintiffs to advance no more than $250 for the arbitrator's filing and arbitrator's fee; allows Plaintiffs to withhold consent to TCN's choice of arbitrator; allows Plaintiffs and TCN to agree on the respective rules of arbitration; sets no limit on the amount the arbitrator may award; and permits Plaintiffs to pursue remedies in California small claims court. We conclude the trial court properly found the agreement to arbitrate to be substantively unconscionable.

13

As the trial court determined, the arbitration provision's forum selection clause is substantively unconscionable. Unconscionable provisions include those "that seek to negate the reasonable expectations of the nondrafting party." (*Valencia, supra,* 61 Cal.4th at p. 911.) There is nothing in the record to suggest Plaintiffs reasonably could have expected at the time of contracting that they would be required to resolve any disputes in Indiana. A TCN sales representative visited Plaintiffs' homes in California and enrolled them in a program that would purportedly enable them to become licensed nurses in California, through a partnership between Indiana and California colleges. Although TCN is based in Indiana, it solicited Plaintiffs' business in California through a California-based sales representative. Arbitration in Indiana would not have been in Plaintiffs' reasonable expectations, and the forum selection provision renders the agreement to arbitrate substantively unconscionable. (See *Patterson, supra,* 14 Cal.App.4th at p. 1665 ["While arbitration per se may be within the reasonable expectation of most consumers, it is much more difficult to believe that arbitration in Minnesota would be within the reasonable expectation of California consumers."]; *Lhotka, supra,* 181 Cal.App.4th at p. 825 ["plaintiffs, residents of Colorado, were required to mediate and arbitrate in San Francisco—all but guaranteeing . . . that any recovery plaintiffs might obtain would be devoured by the expense they incur in pursuing their remedy"]; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 909 (*Bolter*) ["it is simply not a reasonable or affordable option for [small business-owner plaintiffs] to abandon their offices for any length of time to litigate a dispute several thousand miles away"].)

14

That Plaintiffs could participate in arbitration proceedings by phone or video does not change the outcome. Plaintiffs must choose whether to incur significant expenses to pursue their claims in an unreasonable forum or to appear remotely, foregoing the ability to testify in person, while TCN, a company that solicited business in California, participates in proceedings in its own backyard. We agree with the trial court that "even arranging to appear through video as allowed in the agreement . . . would unfairly benefit [TCN]." Absent reasonable justification for this arrangement, "arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing [the stronger party's] advantage." (*Armendariz, supra,* 24 Cal.4th at p. 118.) "Arbitration was not intended for this purpose." (*Ibid.*; see *Comb v. PayPal, Inc.* (N.D.Cal. 2002) 218 F.Supp.2d 1165, 1177 ["Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes."].)

The analysis is also not changed by the fact Plaintiffs could pursue remedies in California small claims court. "Presenting a consumer litigant who has suffered a small monetary loss with the Hobson's choice of litigation in a distant forum and the limited relief available in small claims court does not cure the problem. Small claims courts do not provide the panoply of relief available in court or before an arbitrator, such as punitive damages and attorney fees. . . . The possibility of redress in small claims court does not persuade us that a patently unreasonable forum selection clause should be enforced." (*Aral v. EarthLink, Inc.* (2005) 134 Cal.App.4th 544, 562 (*Aral*).)

15

TCN cites *Carnival Cruise Lines v. Shute* (1991) 499 U.S. 585 (*Carnival*), which upheld a forum selection clause requiring Washington State residents to pursue litigation in Florida. TCN contends *Carnival* compels the conclusion that forum selection in Indiana is not unconscionable. We disagree.

In *Carnival*, Washington residents bought tickets from a Florida company to take a cruise from California to Mexico. (*Carnival, supra,* 499 U.S. at pp. 587-588.) In suing Carnival Cruise Lines in Washington for personal injury, the plaintiffs *conceded* they had notice of the forum selection clause in their purchase contracts requiring litigation in Florida. (*Id.* at p. 595.) The Supreme Court held the forum selection clause was enforceable. (*Ibid.*)

Here, by contrast, substantial evidence supports the trial court's finding that Plaintiffs were unaware of the arbitration provision altogether, much less its forum selection in Indiana. Further, *Carnival* emphasized that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." (*Carnival, supra*, 499 U.S. at p. 595.) Unlike *Carnival,* "this dispute [is] an essentially local one inherently more suited to resolution in the State of [California] than in [Indiana]." (Cf. *Carnival, supra,* at p. 594; see *Aral, supra,* 134 Cal.App.4th at p. 561 [distinguishing *Carnival* and holding a provision requiring California consumers to arbitrate claims in Georgia "unreasonable as a matter of law"].)

In addition to the forum selection clause, there are other indicia of substantive unconscionability.[3] The arbitration provision allows TCN to select the arbitrator. Although Plaintiffs can withhold consent to TCN's choice, consent "shall not be unreasonably withheld." Unlike agreements requiring an arbitrator to be selected from a neutral arbitration service, the parties' arbitration provision contains no assurances of neutrality. At the hearing on TCN's motion to compel, Plaintiffs' counsel argued he would have no way to assess whether the arbitrator TCN selected would be biased. We agree that the arbitrator selection procedure renders the arbitration provision substantively unconscionable. (See *Sonic II, supra,* 57 Cal.4th at p. 1152 ["an adhesive agreement that gives the [drafting party] the right to choose a biased arbitrator is unconscionable"], citing *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 826-827.)

For example, in *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, a California employee of a Texas-based company sued under California wage-and-hour laws. The company moved to compel arbitration. The employment agreement limited the pool of potential arbitrators to individuals who resided in Texas and were licensed to practice law in Texas. (*Id.* at p. 253.) Although employees were allowed to participate in choosing an arbitrator, they could not suggest candidates who were licensed in California and experienced in California wage-and-hour law. (*Ibid.*) The court rejected this selection procedure as unconscionable, holding there was "no rational

---

3    The trial court premised its finding of substantive unconscionability on the forum selection clause alone. However, we exercise our independent judgment as to the legal effect of undisputed facts. (*Lhotka, supra,* 181 Cal.App.4th at p. 820.)

17

justification to limit the potential pool of arbitrators in this fashion" in a California wage-and-hour dispute. (*Ibid.*) The court concluded the arbitrator selection procedure had "no apparent justification other than to tilt the scale of arbitral justice to one side's advantage"—i.e., the Texas-based employer. (*Ibid.*) Here, the selection procedure is arguably even more one-sided because it allows Indiana-based TCN to *unilaterally* select an arbitrator and limits Plaintiffs to providing or "reasonably" withholding consent. Therefore, here, as in *Pinela*, the arbitrator selection procedure is further indication of unconscionability.

The arbitration provision's shortened limitations period provides another indicator of substantive unconscionability. The provision requires claims to be filed within one year of accrual. By contrast, Plaintiffs' Unfair Competition Law claims are subject to a four-year statute of limitations (Bus. & Prof. Code, § 17208), and their Consumer Legal Remedies Act claims are subject to a three-year statute of limitations (Civ. Code, § 1783). An arbitral limitations period that is shorter than the otherwise applicable period is one factor that supports a finding of substantive unconscionability. (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1283, fn. 12 ["the shortened limitations period . . . is *one factor* leading us to hold that the contract is substantively unconscionable"]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1145 [same].)

Thus, we agree with the trial court that the arbitration provision in TCN's purchase agreement is so one-sided as to be substantively unconscionable. Combined with the

18

high degree of procedural unconscionability, the arbitration provision as drafted is unconscionable and, therefore, unenforceable.

## III.

### *Severability*

If an agreement to arbitrate is unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) The trial court declined to sever unconscionable terms from the parties' arbitration provision. Concluding it could not do so without, in effect, rewriting the arbitration provision, the court voided the entire provision.

We review the trial court's decision on severability for abuse of discretion. (*Armendariz, supra,* 24 Cal.4th at p. 122; *Lhotka, supra,* 181 Cal.App.4th at p. 821.) "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." (*Ajamian, supra*, 203 Cal.App.4th at p. 802.)

An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision. (*Armendariz, supra,* 24 Cal.4th at p. 124.) "Such multiple defects indicate a systematic effort to impose arbitration on [the nondrafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage." (*Ibid.*) An arbitration agreement is also

19

deemed "permeated" by unconscionability if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id.* at pp. 124-125.) If "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," the court must void the entire agreement. (*Id.* at p. 125.)

As we explained above, the arbitration provision contains multiple unconscionable terms. Some, such as the forum selection in Indiana, may be easy to sever. (See, e.g., *Bolter, supra,* 87 Cal.App.4th at p. 911 [severing unconscionable forum selection clause].) However, other terms, such as the arbitrator selection procedure, can only be remedied by re-writing the parties' agreement to arbitrate. That is not a proper court function. (*Armendariz, supra,* 24 Cal.4th at p. 125 ["Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement."].)[4] Therefore, the trial court did not abuse its discretion in voiding the entire arbitration agreement rather than severing unconscionable terms. (See *Ajamian, supra,* 203 Cal.App.4th at pp. 803-804 [no abuse of discretion in voiding entire arbitration provision where there were multiple unconscionable terms that could not be cured by severence]; *Lhotka, supra,* 181 Cal.App.4th at p. 826 [multiple unconscionable terms weighed against severance].)

---

[4]     TCN's counsel made the same point below, arguing the trial court lacked power to insert terms into the parties' arbitration provision. TCN is correct, however, that it never argued that severance of the forum selection clause would require the court to rewrite the provision.

DISPOSITION

The order denying TCN's motion to compel arbitration is affirmed.  Plaintiffs

Bernadette Magno, Rosanna Garcia, and Sheree Rudio shall recover their costs on appeal.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BERNADETTE MAGNO et al., | D067687 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00003057-CU-FR-CTL) |
| THE COLLEGE NETWORK, INC., | |
| Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed June 14, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties