Filed 11/17/21; Certified for Publication 12/8/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANTHONY DE LEON,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, et al.,<br><br>     Defendants and Appellants. | G059801<br><br>(Super. Ct. No. 30-2020-01142813)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Frederick P. Horn, Judge.  Affirmed.

Jackson Lewis, Thomas G. Mackey and Dylan B. Carp for Defendants and Appellants.

Employees First Labor Law, Jonathan P. LaCour and Lisa Noveck for Plaintiff and Respondent.

*          *          *

Defendants Pinnacle Property Management Services, LLC (Pinnacle) and Jennifer Stewart (Stewart) appeal from the court's order denying their motion to compel arbitration. The court denied the motion because it determined the arbitration agreement was procedurally and substantively unconscionable. As to the former, the court noted the agreement was unconscionable because plaintiff Anthony De Leon was required to sign the arbitration agreement as a precondition to his employment. As to the latter, the court found the agreement was substantively unconscionable because of its limits on discovery and because it shortened the statute of limitations to one year on all claims.

On appeal, defendants contend the arbitration agreement had low procedural unconscionability and contained only one substantively unconscionable provision—the statute of limitations provision. They alternatively claim the court erred by failing to sever any unconscionable provisions. For the reasons below, we agree with the court's unconscionability findings. The court also did not abuse its discretion by refusing to sever any portion of the arbitration agreement. We accordingly affirm.

FACTS

*The Issue Resolution Agreement*

In 2016, plaintiff submitted an electronic application for employment with Pinnacle. Among other things, he electronically signed an "Issue Resolution Agreement" (IRA), which he was required to sign as a precondition to employment. The IRA provided that plaintiff and Pinnacle agreed to "settle any and all previously unasserted claims, disputes or controversies arising out of or relating to [plaintiff's] application or candidacy for employment, employment, and/or cessation of employment with Pinnacle . . . **exclusively** by final and binding **arbitration** before a neutral Arbitrator." The selected arbitrators would have experience deciding employment disputes, and arbitration would be conducted in accordance with the "Issue Resolution Rules" (IRR).

2

The IRA further advised: "The [IRA] and the Issue Resolution Rules affect your legal rights. You may wish to seek legal advice before signing this [IRA]." (Boldface omitted.) Plaintiff could withdraw his consent to the IRA within three days of signing if he notified Pinnacle he no longer wanted to be considered for employment.

The IRR were attached to the IRA and included several provisions that are central to this appeal. First, rule 4(b)(i) of the IRR included the following statute of limitations provision: "The 'Arbitration Request Form' shall be submitted not later than **one year** after the date on which the Employee knew, or through reasonable diligence should have known, of the facts giving rise to the Employee's claim(s). The failure of an Employee to initiate an arbitration within the one-year time limit shall constitute a **waiver** with respect to that dispute relative to that Employee. Notwithstanding anything stated herein to the contrary, this clause will not affect tolling doctrines under applicable state laws or the employee's ability to arbitrate continuing violations." The statute of limitations was repeated on the third page of the IRA: "I understand that I must file a claim for arbitration within one (1) year of the day on which I learned or, through reasonable diligence, should have learned that my legal rights were violated."

Second, rule 7 of the IRR was a discovery provision that allowed: (a) "one set of 20 interrogatories . . . to the opposing Party," which could include "a request for all documents upon which the responding party relies in support of its answers to the interrogatories"; and (b) three depositions by each side. The arbitrator could permit additional discovery "[u]pon the request of any Party and a showing of **substantial need**" "but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration." In resolving discovery disputes, the arbitrator would be guided by the Federal Rules of Civil Procedure.

Third, the IRR included the following costs provision: "The Company shall advance all costs of arbitration. Each Party shall advance its own incidental costs. . . . [E]ach Party shall pay one-half of the costs of arbitration following the

issuance of the arbitration award.  The Employee's liability for the costs and fees of arbitration, other than attorneys' fees, however, shall be limited to $100."

*Plaintiff's Complaint*

In 2020, plaintiff filed a complaint alleging he was employed as a nonexempt employee at Pinnacle and reported to Stewart.  According to the complaint, defendants did not compensate plaintiff for overtime work or certain business expenses and did not provide accurate wage statements.  The complaint further alleged plaintiff injured his back while working and went on leave due to back pain.  Once his doctor released him to return to work with restrictions, plaintiff expressed his desire to return to work but allegedly never heard back from defendants.

The complaint accordingly alleged claims for:  (1) failure to pay minimum wages; (2) failure to furnish wage statements; (3) failure to pay wages timely; (4) failure to pay overtime wages; (5) failure to reimburse business expenses; (6) waiting time penalties; (7) wrongful constructive termination in violation of the Fair Employment and Housing Act (FEHA); (8) disability discrimination in violation of FEHA; (9) violation of Business & Professions Code section 17200 (UCL claim); (10) failure to accommodate a disability in violation of FEHA; (11) failure to engage in a good faith interactive process in violation of FEHA; (12) wrongful constructive termination in violation of Labor Code section 1102.5; and (13) wrongful constructive termination in violation of public policy. The claims were alleged against both Pinnacle and Stewart with the exception of the seventh through eleventh and thirteenth causes of action, which were limited to Pinnacle.

*Defendant's Motion to Compel Arbitration and the Court's Order*

In October 2020, defendants filed a motion to compel arbitration contending plaintiff's claims fell within the scope of the IRA.  Plaintiff opposed the motion on grounds that the IRA was unconscionable.  Among other things, he argued the

4

provisions providing for a shortened one-year statute of limitations and limited discovery were substantively unconscionable. He also claimed the IRA improperly shifted fees and costs to him and was one-sided.

In support of his opposition, plaintiff submitted the declaration of his counsel who estimated plaintiff would need to: (1) serve at least 50 interrogatories to Pinnacle alone; (2) serve at least 70 requests for production of documents; and (3) depose seven specified individuals. The declaration also ambiguously stated plaintiff "would need up to the full Code of Civil Procedure limit of 35 requests." With respect to the interrogatories, the declaration stated they were necessary "to gather basic information about [d]efendants' policies on overtime and off-the-clock work, meal and rest breaks, and reimbursements, [d]efendants' policies with respect to discrimination and reporting illegal activity at the workplace, as well as [d]efendants' knowledge of [p]laintiff's disability and need for accommodations." Likewise, plaintiff needed information about "how [d]efendants implemented those policies with respect to [p]laintiff specifically, in addition to [d]efendants' communications with [p]laintiff about his wages, injury, complaints of illegal activity by [d]efendants, and need for workplace accommodations, among other communications."

In November 2020, the court denied defendants' motion and found the IRA was procedurally and substantively unconscionable with provisions that could not be severed from the agreement. First, the court held the IRA was procedurally unconscionable because plaintiff was required to sign the IRA as a precondition to his employment. Second, the court found the IRA was substantively unconscionable because of its limits on discovery and because it shortened the statute of limitations to one year on all claims. Relying on *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713 (*Baxter*) and *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702 (*Fitz*), the court held plaintiff produced evidence establishing the discovery limits were insufficient for him to pursue his 13 claims. The court further noted, "[T]he IRA does not appear to permit for

5

adequate discovery of third parties prior to the hearing at the arbitration." Finally, the court held the unconscionable provisions could not be severed from the IRA because there otherwise would be no provisions on discovery.

DISCUSSION

Defendants contend the court erred by finding the IRA was unconscionable and thus unenforceable. According to defendants, the IRA has low procedural unconscionability and contains only one substantively unconscionable provision—the statute of limitations provision. They alternatively claim the court erred by failing to sever any unconscionable provisions. We agree the IRA has some degree of procedural unconscionability but find both the statute of limitations and discovery provisions are substantively unconscionable. As a result, we affirm.

*Unconscionability*

Both California law and federal law favor the enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96-97 (*Armendariz*).) But courts will not enforce an arbitration agreement that is unconscionable. (*Id.* at p. 99.) Unconscionability """refers to '"absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."""" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*).)

Both procedural and substantive unconscionability must be present before an arbitration provision is rendered unenforceable on unconscionability grounds, but

6

"""they need not be present in the same degree."""" (*Baltazar*, *supra*, 62 Cal.4th at p. 1243.) Courts invoke a sliding scale in which ""'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Id.* at p. 1244.) ""'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*Id.* at p. 1245.)

On appeal from the denial of a motion to compel arbitration, we review the court's ruling on unconscionability de novo to the extent it is based on a pure question of law. To the extent the court's determination of unconscionability is based upon its resolution of conflicts in the evidence or on the factual inferences that may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence. (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 236-237.)

A. Procedural Unconscionability

"Procedural unconscionability may be proven by showing oppression, which is present when a party has no meaningful opportunity to negotiate terms or the contract is presented on a take-it-or-leave-it basis." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1246 (*Wherry*).) In the employment context, "[a]n arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114 (*Martinez*).)

Here, defendants concede the IRA was procedurally unconscionable because it was a contract of adhesion. But they claim the IRA had "low procedural unconscionability" because it was not buried in an employment agreement and was instead a stand-alone arbitration agreement. They rely on *Roman v. Superior Court*

7

(2009) 172 Cal.App.4th 1462 (*Roman*) and *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398 (*Sanchez*).  In *Roman*, the court found procedural unfairness was "limited" because the arbitration provision was "contained on the last page of a seven-page employment application" (*Roman*, at p. 1471), and "was set forth in a separate, succinct (four-sentence) paragraph that [the employee] initialed, affirming she had seen it" (*ibid*.).  In *Sanchez*, the court found the adhesive nature of the agreement was "evidence of some degree of procedural unconscionability" where the "stand-alone arbitration agreement was not hidden, but prominently featured as part of the employment application." (*Sanchez*, at p. 403.)

We agree the arbitration agreement in the instant case was not hidden or buried in another agreement.  Instead, it was presented as a stand-alone "Issue Resolution Agreement" as part of Pinnacle's employment application.  The word "arbitration" appeared in bold text, and the first page of the IRA included the following bold text: "This Agreement requires you to arbitrate any legal dispute related to your application for employment, employment with, or termination from Pinnacle . . . ."  In his declaration, plaintiff acknowledged he signed the IRA and understood that he had to sign in order to begin his employment with Pinnacle.  But he claims he did not know "how one sided, unfair, and illegal it was," which implies he did not understand all of the terms.  He also claims Stewart "pressured" him to sign the agreement.  Considering this evidence along with the unconcealed nature of the IRA, the agreement had some degree of procedural unconscionability.  Still, we must determine if the IRA was substantively unconscionable.


B.  Substantive Unconscionability

Substantive unconscionability exists when a term is so one-sided as to shock the conscience.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.)  "'Substantive unconscionability "may take various forms," but typically is found in the employment context when the arbitration

8

agreement is "one-sided" in favor of the employer without sufficient justification.'" (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 177.)

In evaluating substantive unconscionability, courts often look to whether the arbitration agreement meets certain minimum levels of fairness. In *Armendariz*, our Supreme Court instructed that, at a minimum, a mandatory employment arbitration agreement must (1) provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award that permits limited judicial review, (4) provide for all of the types of relief that would otherwise be available in court, and (5) require the employer to pay the arbitrator's fees and all costs unique to arbitration. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.) "Elimination of or interference with any of these basic provisions makes an arbitration agreement substantively unconscionable." (*Wherry*, *supra*, 192 Cal.App.4th at p. 1248.)

Although the court did not address each of the above factors, it found one of the requirements lacking because the IRA improperly limited discovery. The court also found unconscionable a provision imposing a one-year statute of limitations on any claims subject to the agreement. We discuss these provisions below.

### 1. One-year Statute of Limitations

The IRA included a provision that shortened the applicable statute of limitations of all claims to one year. Defendants concede this provision is substantively unconscionable "because [plaintiff] has asserted Labor Code claims with longer limitations periods." We agree the provision is unconscionable because many of plaintiff's claims have longer statute of limitations. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1395, 1398 [three-year limitations period for claims under §§ 201 & 203]; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 178-179 [four-year limitations period for UCL claims]; see *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147 [six-month statute of limitations provision was

9

unconscionable where employees were afforded three or four years to assert statutory wage and hour claims]; *Martinez, supra*, 118 Cal.App.4th at pp. 117-118 [six-month statute of limitations provision was unconscionable where FEHA and Labor Code claims provided longer periods].)

### 2. Discovery Limitations

"Although parties to an arbitration agreement may agree to limitations on discovery that is otherwise available under the Code of Civil Procedure, an arbitration agreement must nonetheless '"ensure minimum standards of fairness" so employees can vindicate their public rights.'" (*Baxter, supra*, 16 Cal.App.5th at p. 727.) Employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses . . . ." (*Armendariz, supra*, 24 Cal.4th at p. 106.) "In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims." (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910-911.)

Here, the IRA limits each party to 20 interrogatories and three depositions per side. The interrogatories could also include "a request for all documents upon which the responding party relies in support of its answers to the interrogatories." The IRA otherwise contains no express provision entitling the parties to propound requests for admission or demands for requests for production of all relevant documents. The arbitrator could order more discovery "upon . . . a showing of **substantial need**" "but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration."

10

While superficially neutral, the discovery restrictions favor defendants. "Employment disputes are factually complex, and their outcomes 'are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice.' [Citation.] Seemingly neutral limitations on discovery in employment disputes may be nonmutual in effect. '"This is because the employer already has in its possession many of the documents relevant to an employment . . . case as well as having in its employ many of the relevant witnesses."'" (*Baxter, supra*, 16 Cal.App.5th at p. 727.)

Defendants contend the IRA's discovery provision is analogous to provisions in other arbitration agreements that have been upheld. But the cases they cite are inapposite. In *Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485 (*Torrecillas*), the court found an arbitration agreement's discovery provision was not unconscionable where it entitled each party to 30 interrogatories, five depositions, and a request for documents used to support the interrogatory responses. (*Id.* at p. 497.) Each party also had to provide an initial disclosure of "'any and all documents relevant to any claim or defense.'" (*Ibid.*) The arbitrator could permit additional discovery after a showing of substantial need. (*Ibid.*) Here, plaintiff's discovery rights are not as strong as those in *Torrecillas*. He is entitled to fewer interrogatories and depositions, and the IRA does not require the disclosure of all relevant documents.

In *Sanchez, supra*, 224 Cal.App.4th 398, the court held an arbitration agreement limiting discovery to three depositions and 20 interrogatories was not unconscionable. (*Id.* at pp. 404-406.) The agreement also required the "disclosure of relevant documents and production of the personnel file upon request, with each party under a continuing obligation to supplement its initial disclosure." (*Id.* at p. 404.) The arbitrator could permit additional discovery on a showing of "'substantial need'" if it "'is not unduly burdensome and will not unduly delay the conclusion of the arbitration.'" (*Ibid.*) Unlike the discovery provision in *Sanchez*, the IRA does not provide for any

11

disclosure of relevant documents with a continuing obligation to supplement. Instead, it only allows for interrogatories that could include "a request for all documents upon which the responding party relies in support of its answers to the interrogatories."

In *Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251 (*Poublon*), the court found a discovery limitations provision was not unconscionable where parties could obtain all "relevant documents," request personnel records, and take three depositions. (*Id.* at p. 1271.) The arbitrator could permit additional discovery on a mere showing of good cause, "which would include a demonstrated need for discovery 'sufficient to adequately arbitrate'" the claims. (*Ibid.*) Once again, the IRA does not provide for any similar document discovery and also requires a higher standard than "good cause" to justify additional discovery. Under the IRA, the arbitrator can order discovery only "upon . . . a showing of **substantial need**" "if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration."

In addition to the above differences, the plaintiffs in *Torrecillas*, *Sanchez*, and *Poublon* made no showing of an inability to vindicate their statutory rights under the discovery standards provided in their arbitration agreements. (*Torrecillas*, *supra*, 52 Cal.App.5th at p. 497 [plaintiff "submitted no evidence that five depositions were too few or that other discovery limits created significant barriers to pursuing his claims"]; *Sanchez*, *supra*, 224 Cal.App.4th at p. 404 [plaintiff "has not made any showing how the limitation on discovery would prevent him from vindicating his rights in his particular case"]; *Poublon*, *supra*, 846 F.3d at p. 1271 [same].)

Here, plaintiff set forth facts tending to show he would be unable to vindicate his statutory rights under the discovery limitations of the IRA. He estimated he would need to depose seven witnesses, three of whom are identified by name in the complaint. The other four witnesses include two of plaintiffs' supervisors, one representative from Pinnacle's human resources department, and the medical examiner

12

involved in plaintiff's workers' compensation case against Pinnacle. While defendants contend plaintiff did not identify what information these individuals had, plaintiff's attorney's declaration identified the significance of these witnesses. The declaration stated the supervisors could testify about plaintiffs' compensation, job requirements, and various company policies while the human resources representatives had spoken to plaintiff about his injury and need for accommodations. (*Baxter*, *supra*, 16 Cal.App.5th at p. 729 [plaintiff set forth facts showing default levels of discovery were inadequate where she estimated she needed to depose six to 10 witnesses along with a person most qualified on certain topics].)

Plaintiff also estimated he would need to propound 50 interrogatories. Although the IRA allows "one set of 20 interrogatories . . . to the opposing Party," defendant claims this means plaintiff could serve 20 interrogatories to Pinnacle and 20 interrogatories to Stewart. Even assuming plaintiff could propound 40 interrogatories total, he estimated he would need to propound 50 interrogatories to Pinnacle alone. The interrogatories would seek information regarding defendants' policies on overtime and off-the-clock work, meal and rest breaks, reimbursements, discrimination, reporting illegal activity at the workplace, and defendants' knowledge of plaintiff's disability and need for accommodations. Plaintiff further indicated he would need information about how defendants implemented these policies with respect to plaintiff along with communications about his wages, injury, complaints of illegal activity, and need for workplace accommodations.

Aside from the depositions and interrogatories, plaintiff estimated he would need to serve at least 70 requests for production of documents.[1] Finally, plaintiff stated

---

[1] On appeal, plaintiff adds that he would need to propound 30 to 40 requests for production of documents to Stewart. But plaintiff raises this argument for the first time on appeal. We accordingly do not consider this information, which was not before the trial court.

he "would need up to the full Code of Civil Procedure limit of 35 requests." On appeal, he suggests the latter referred to 35 requests for admission. Under these circumstances, it is reasonable to conclude the IRA's default discovery limits are insufficient for plaintiff to pursue his 13 causes of action concerning wage and hour claims, whistleblower retaliation, wrongful termination, and FEHA issues.

Defendants argue the court erred by relying on *Fitz* and *Baxter*. But the court did not analogize the instant case to *Fitz*. Instead, the court cited *Fitz* to support two general propositions: (1) employment disputes are factually complex and often require the testimony of multiple witnesses and written information about employment practices (*Fitz, supra*, 118 Cal.App.4th at p. 717); and (2) unconscionable provisions cannot be severed where the "'taint of illegality cannot be removed'" (*id*. at p. 727).

The court also relied on *Baxter* to conclude plaintiff had established the IRA's default discovery limits were insufficient. In *Baxter*, the court found an arbitration agreement's default discovery limits were unconscionable where they limited plaintiff to documents from his personnel and medical files and authorized 10 interrogatories, five requests for production of documents, and two depositions for a combined total of eight hours. (*Baxter, supra*, 16 Cal.App.5th at p. 727.) The arbitrator could allow additional discovery "'for good and sufficient cause shown.'" (*Ibid.*) The provision also prohibited the plaintiff, but not the employer, from contacting other employees about his claims. (*Id.* at pp. 724-726.) While defendants argue the IRA's default discovery is more generous than the discovery allowed in *Baxter*, the court properly noted the employee in *Baxter* set forth facts showing the default levels were inadequate similar to plaintiff in the instant case.

Finally, we note the parties disagree as to whether the discovery provision is further unconscionable due to limitations on third party discovery. The court's order indicated that "the IRA does not appear to permit for adequate discovery of third parties prior to the hearing at the arbitration." The court explained the IRA allows the arbitrator

14

to enforce or cancel subpoenas but found this provision was set forth in a portion of the agreement concerning hearing procedures. Defendants disagree and claim the arbitrator could allow third party discovery on a showing of substantial need. We need not decide the issue because we find the discovery provision is substantively unconscionable for the reasons discussed above.

### 3. Costs Provision and Other Concerns

Plaintiff raises additional concerns about the IRA that the court did not rely upon in its ruling. First, he argues the IRA illegally shifts fees and costs. Plaintiff relies on the following provision: "The Company shall advance all costs of arbitration. Each Party shall advance its own incidental costs . . . . [E]ach Party shall pay one-half of the costs of arbitration following the issuance of the arbitration award. The Employee's liability for the costs and fees of arbitration, other than attorneys' fees, however, shall be limited to $100."

Plaintiff claims this provision is ambiguous because it says he is responsible for half of the arbitration costs while also saying his costs are limited to $100. While the provision is poorly drafted, we find no ambiguity. The provision clearly states plaintiff's arbitration costs and fees "shall be limited to $100." We also disagree with plaintiff's assertion that the $100 cost is improper because he would not have to pay any "arbitration costs" if he had proceeded with a civil action. In *Baxter*, the court found a $50 arbitration initiation fee was permissible because it was "substantially lower than the 'usual costs' Baxter would have to incur as filing fees if she pursued a civil action . . . ." (*Baxter*, *supra*, 16 Cal.App.5th at p. 737.) Likewise, here, the $100 cost is lower than the usual costs plaintiff would have to incur in filing fees if he pursued a civil action. And, the IRA defines "'Costs of arbitration'" to include "filing or administrative fees charged by an arbitration service." Viewing the $100 as a minimal filing or administrative fee,

15

which is expressly included as a cost of arbitration in the IRA, we find the costs provision is not unconscionable.

Plaintiff's reliance on *Martinez* is also misplaced. In *Martinez*, the arbitration agreement required the parties to split the entire cost of the arbitration and to post fees before the hearing. (*Martinez*, *supra*, 118 Cal.App.4th at pp. 115-116.) Here, plaintiff would only have to pay $100 after the hearing.

Second, plaintiff contends the IRA is not bilateral because it "carves out a subset of potential claims from arbitration that are wholly nonmutual." While employees have to arbitrate their claims, he argues Pinnacle would not have to arbitrate collective actions where mass arbitrations are asserted. He points to the following provision: "Without the express written consent of all parties, the Arbitrator shall not consolidate claims of different employees into one proceeding . . . . Unless the parties mutually agree, the parties agree that the arbitrator has no authority to adjudicate a 'class action.'" According to plaintiff, this "leaves the choice exclusively to [defendants] as to whether a collective or class claim might ever exist." Not so. The IRA states the arbitrator cannot consolidate claims of different employees without the mutual consent of *all* parties.

Third, plaintiff contends the IRA is not bilateral because it states, "Claims by Employees for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) are not subject to arbitration." But any arbitration agreement must exclude these claims. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 176 ["Workers' compensation and unemployment benefits are governed by their own adjudicatory systems; neither is a proper subject matter for arbitration"].) We accordingly do not find the cost provision, class arbitration waiver, or provision regarding state employment insurance to be substantively unconscionable.

16

*Severability of Unconscionable Provisions*

Civil Code section 1670.5, subdivision (a) gives trial courts discretion to sever unconscionable provisions from a contract: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Ibid.*)

Here, the court declined to sever the substantively unconscionable terms, reasoning that those "provisions, particularly the limitations on discovery, cannot be severed from the IRA, as striking same would leave the parties with no provisions on discovery."

We review the court's ruling for abuse of discretion. (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) "Under that standard, there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.) "We reverse the judgment only if in the circumstances of the case, viewed most favorably in support of the decision, the decision exceeds 'the bounds of reason' [citation], and therefore a judge could not reasonably have reached that decision under applicable law [citations]." (*Ibid.*)

"'In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is "permeated" by unconscionability.' [Citation.] [¶] An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision. [Citation.] 'Such multiple defects indicate a systematic effort to impose arbitration on [the nondrafting party] not simply as an alternative to litigation,

17

but as an inferior forum that works to the [drafting party's] advantage.' [Citation.] An arbitration agreement is also deemed 'permeated' by unconscionability if 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.] If 'the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms,' the court must void the entire agreement." (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 292.)

Given the multiple unconscionable provisions in the IRA, the agreement is permeated by unconscionability. The agreement "contains more than one unlawful provision;" it has both an unconscionable statute of limitations provision and an unconscionable discovery provision. (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. In other words, given the multiple unlawful provisions, the . . . court did not abuse its discretion in concluding that the [IRA] is permeated by an unlawful purpose." (*Ibid.*)

Defendants argue the court could have stricken the statute of limitations and discovery provisions (rule 4(b)(i) & rule 7 of the IRA) without affecting the rest of the agreement.[2] Upon severance of the discovery provision, they claim discovery would be governed by the American Arbitration Association (AAA) or JAMS employment arbitration rules and procedures.[3] Even if it were possible to revise the agreement, we would be disinclined to do so. Under *Armendariz,* a court can refuse to enforce an arbitration agreement based upon a single unconscionable term, which might otherwise

[2] Page 3 of the IRA repeats the statute of limitations provision in the first sentence of the third paragraph.

[3] We grant defendants' unopposed request for judicial notice of AAA and JAMS rules applicable to employment disputes.

18

appear severable, if it concludes the term is the product of bad faith. As the court explained, "The overarching inquiry is whether '"the interests of justice . . . would be furthered"' by severance." (*Armendariz, supra,* 24 Cal.4th at p. 124.) "An employer will not be deterred from routinely inserting . . . a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter." (*Id.* at p. 125, fn. 13.)

*Armendariz* suggests we should look to whether the law was "sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that [the provision] was drafted in bad faith." (*Armendariz, supra,* 24 Cal.4th at p. 125, fn. 13.) The IRA in this case was signed by plaintiff in 2016. At that time, other cases had concluded similar unilateral statute of limitations provisions were unconscionable when contained in an employment contract. (*Samaniego v. Empire Today LLC*, *supra*, 205 Cal.App.4th at p. 1147; *Martinez*, *supra*, 118 Cal.App.4th at pp. 117-118.) With respect to the discovery provision, defendants contend *Sanchez* upheld a "nearly identical discovery provision" two years before plaintiff executed the IRA. But as discussed *ante*, *Sanchez* is inapposite because the agreement in that case required the disclosure of relevant documents with a continuing obligation to supplement. The IRA in this case does not include a similar discovery obligation. And, while superficially neutral, the discovery restrictions in the IRA favored defendants who already had many of the documents relevant to plaintiff's employment.

While "the general rule does favor arbitration and [states] terms should be interpreted liberally [citation], . . . when the agreement is rife with unconscionability, as here, the overriding policy requires that the arbitration be rejected [citation]." (*Wherry, supra*, 192 Cal.App.4th at p. 1250.) The court accordingly did not abuse its discretion by refusing to sever any portion of the IRA.

DISPOSITION


The order is affirmed.  Plaintiff shall recover his costs on appeal.



MARKS, J.*

WE CONCUR:



FYBEL, ACTING P. J.



GOETHALS, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANTHONY DE LEON, | |
| Plaintiff and Respondent, | G059801 |
| v. | (Super. Ct. No. 30-2020-01142813) |
| PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, et al., | O R D E R |
| Defendants and Appellants. | |

The California Labor Commissioner has requested that our opinion, filed on November 17, 2021, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MARKS, J.*

WE CONCUR:


FYBEL, ACTING P. J.


GOETHALS, J.

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.